Good morning, your honor. May it please the court. My name is Tim Pruden. I represent Jade Mound, Ron VanderWaal, Evan Thompson, and Steve Willard, the plaintiff's appellants here who lost family members or were seriously injured when a culvert running under the BIA Highway 3 on the Standing Rock Sioux Reservation in North Dakota washed out in a pre-dawn rainstorm in June of 2019. This court should reverse the decision of the district court below on the plaintiff's failure to warn claim, specifically the failure by the BIA to warn of the known hidden hazard posed by the failing culvert. The reason that this court should overturn is that the two Eighth Circuit cases cited by the court below, Walters v. United States and Demaret v. the Department of Interior, they were cited by the court below as controlling that they are, in fact, distinguishable. Now, you have to — I assume you have read our recent Alberti case. I have read Alberti. You've got to include that in the mix. Anxious to talk — yes, that's a good point. I should include that. Anxious to talk about it. So, under the facts of this case, the specific facts of this case, the BIA's decision not to warn the public of this failing culvert cannot be found, should not be found, to be grounded in social, economic, or political policy such that the discretionary function immunity exemption applies. The key here are the facts. The Supreme Court has held that these discretionary function exemption cases are impossible to define with precision. That's the — that's the situation we find ourselves in. As a result, much of the jurisprudence here is heavily fact-driven. I'm not going to spend a lot of time on the facts, but I want to highlight three or four key facts in this case. Now, how much — I'm interpreting your appeal as limited to the failure to warn. 1,000 percent. We have abandoned the failure to maintain claim. Which, apparent, did not — does not appear from the district court's opinion to have been the focus there. But so — Correct. Correct. The court was not dealt a full deck on this issue, so to speak. On the failure to warn. We certainly pled both. We certainly argued both. But I would concur with Your Honor that much of the — of the record and briefing below was focused on the idea of whether or not the failure to maintain claim, whether or not there were regulations, you know, that mandated certain things to be taken care of. We're not — we've raised none of those on appeal. The BIA clearly knew — in 2014, five years before this incident, they knew this culvert was failing. And it was — Well, let me — I don't mean to cut you off, but to me there's a more fundamental question. And I know we're dealing with a discretionary function exception here, but I'm — I'm having a little trouble almost on the proximate cause issue before we even get to that. Because let's assume the BIA put a sign up five years before this failure that said, this culvert — well, I don't know what the sign would say, first of all. Would it say, this culvert's in danger of washing out? Caution? I don't know what it would be. But if you've used that — if you've gone by that sign five years, is that going to give you any particular warning that it was washed out this night? Well, we certainly have signs — I'm going to — first, I'm going to tell you what the sign should have said. We have signs that say, danger, falling rocks. And people drive past them all the day, all the time, but they're still there. This sign should have said, danger, washout potential. Caution and — use caution in rainstorms. And such a sign — again, the — I didn't look at the Eighth Circuit pattern jury instructions for today, but I can tell you in my recollection, the North Dakota pattern jury instructions to a jury say that a warning given shall be presumed to be — have been followed. That is — so I understand your question, but there is a — we do see other warnings in similar situations, and the law presumes that they're — that they're followed. So I'm going to skip ahead through the facts. I'm going to get to the meat here. We — the question is whether or not a failure — a decision on whether or not to place a warning sign is grounded in social, economic, or political policy. For certain, there are such decisions that are made that are protected by the exemption. Right? Alberti is one of them. In Alberti, when you're designing a façade — when they designed the façade of the federal building in Des Moines, Iowa, they created a walkway that led to a man with limited vision injuring himself. And the Eighth Circuit held that, well, the government there, the General Services Administration, weighed safety versus aesthetics. And that's the sort of discretionary function that can be found to be immune. And there are other cases like that, many of them involving national parks and signs. And we agree that if the national — you know, we can — we agree that if the National Park Service decided not to put a sign on the edge of the Grand Canyon saying, danger, Grand Canyon, don't fall in, that as they weigh that versus the aesthetics of the view, that that's a legitimate policy determination that's protected by the exemption. Here we don't have any of that. There's no aesthetic concern here. The sole policy that the government can point to that it claims will — makes this discretionary is the de minimis cost of putting up the sign. That's it. There's no aesthetic consideration. There's no political consideration. It's a solely economic consideration. And it's limited to the de minimis cost of the sign. Now, there's no evidence in this record that anybody at the BIA actually considered this, actually wondered how much a cost was — a sign would cost. We were here on a motion to dismiss, but it was Rule 12b-1. Does the court have jurisdiction? So the court considered voluminous materials provided by the government to support its position of a discretionary decision. Nowhere in that record is there anything about anybody at the BIA considering the cost versus safety of these warning signs. As we've talked about, there are a lot of warning cases out there. Alberta, there's a lot of people falling at post offices and federal buildings. But there are only two cases, really, that I've identified that deal with the risk — the failure to warn a motorist of a roadway hazard. And of course, COPE is the case out of the D.C. Circuit that we feel is most analogous to here. COPE also involved a known hidden danger, a worn, bald spot on the National Park Highway running through the Rock Creek Park in Washington, D.C. The National Park Service — someone skidded out. There was an accident. There was a lawsuit. The National Park Service said, well, we're the National Park Service. There's an aesthetic versus safety analysis here that's discretionary. And the D.C. Circuit said — I was going to ask you about COPE, but not in this context, in the context in which we have interpreted and applied COPE. Right. Was that the focus in the district court? Did anyone argue that? I certainly — I believe I argued COPE in the district court. You argued, yeah, do what COPE did. But that's not the way we interpreted COPE. You may very well be referring to the meter decision, Your Honor, which you authored. That's right. Right. Okay. So how did the meter court distinguish COPE? The meter court did two things. It said that COPE is not binding because it's from the D.C. Circuit. Well, of course, that's true. And I would argue, too, that meter was not a roadway hazard case. It was my recollection that's the Gavin Point. They'd removed the guardrails. The pickup went out of gear and rolled down and killed some poor fella. And there was no warning sign that the guardrail had been taken out. That guardrail had been removed for flood control measures. But Your Honor said two things. You said COPE is not controlling. And then you said our facts are different. And you related the facts about the Gavin Point Dam just as I did. I would argue that our facts are different from meter. See, that isn't the part of matter that I was talking about. Okay. I was talking about our facts are different. In the next sentence, appellants have not alleged or presented evidence to show the court had either adopted a safety policy or established priorities to guide the court's decision in maintaining the road and the facilities at the dam. And therefore, they failed to rebut the presumption that the court's decision not to post warning signs was grounded in policy. Right. So there's a... I don't see that the district court applied or that either side argues that here. The presumption, right? That's what you're getting at. No, no, no. The fact that the underlying facts that we say are required to even challenge the presumption. Well, we have no evidence... policy. There has to be a... the decision has to be grounded in policy. You just said, let me... You just said, no, there's no evidence anyone in the BIA even considers. Right. That's not the test. No, right. The test is, did the BIA have a policy regarding warning here or in general on this road? Yeah. So there's no evidence in the record that they did. Yeah. And that's your burden to come up with. Well, there's a presumption... That's MEDR. That's our controlling law. The burden is clearly... and MEDR is not the only key. I mean, all of the ones that you are trying to distinguish. Yeah. I'm trying to understand. The burden is on the parties. Well, see, when I think of the burden here, I think of the discussion in these cases about... Presumption. Presumption. Well, of course, this is mostly dismissed. We didn't have any discovery here. It isn't which lawyer is most articulate. Well, I hope not. You're doing very well. I would... I mean, I'm struggling a little bit. We're in a motion to dismiss. We didn't have any opportunity to do any discovery. They got to bring some stuff in because it's a jurisdictional thing. We haven't had a chance to have discovery here. So to say that we haven't met a burden... Good point. But now, what was the district... Was this distinction even argued? We need discovery, not to show all these terrible facts, but to probe the BIA's policy approaching. I mean, we... Warning. I certainly believe we briefed and argued below why discovery would be efficient and he should deny the motion. Yeah, no, yeah, no, that's not... Yeah, I mean... We need discovery gets... Well, you get that a lot, right? That doesn't get you much... But, I mean, what I would say here, Your Honor, and I would like to reserve some substantial time for rebuttal, but I would just say this, that the Supreme Court has set up a two-step process here. The first step is, like, is there a regulation directly on point? And if you don't follow it, you're not immune, right? And then the second step is this one. Is it grounded in social, economic, or political policy, right? What the government's position in this case is, well, if we can tie it at all to the cost of the sign, the economic cost of the sign, even a de minimis cost, if we can tie it to that, that's an economic policy and we're immune. Well, that really does away completely with that second prong of analysis because, as Judge Colleton said in the Walters case in his dissent, and which many other courts have said in this context, everything the government does is subject to funding. So there has to be a set of cases out there where there is not immunity because all there is is funding. There's no aesthetic. There's no Grand Canyon sort of issue. Wait a minute. So is there that universe of cases? Well, sure. Culp, Parrish, Boyd. Okay. Culp is the one we talked about. Boyd is the swimmer. The rest appear to be district court. So Parrish is district court. Culp, Boyd. I think it's George, which is the alligator case. I think that's a circuit court case. The National Park Service didn't warn of the known hidden dangers of alligators in the swimming pool. I don't like oral argument, just cases. I don't either, but in this context, because of the fact-driven nature, as I preferred for argument, I had to sit down and read all these cases because the Supreme Court says it's impossible to define with precision. So we are left with this sort of factual analysis, and that's this type of case. Warning is different. Warning is different, and I think... Warning is, and, you know, everybody, you all want to talk about, you know, is this a gravel road or is this a culvert, and what's construction and what's maintenance and so forth. Warning is a completely different, in my view, a different set of, a different inquiry. I think that... And the matter construing Culp made an attempt to pick up on your point that it can't just be a menacing cost, can't get it done for the government. If you've got aesthetics in the view at the Grand Canyon, you're immune. If it's just the cost of the sign, I think that's a different case. I'd like to reserve, if I could, the last minute 45 for rebuttal. Thank you. Mr. Dos Santos? May it please the Court, Josh Dos Santos on behalf of the United States. Your Honor, just to pick up on the discussion that just took place, I think most of, many of the points have been discussed. I would just briefly note that... You need to speak up a little bit. Sorry. I don't know that the mic will do it. Just to pick up on the discussion... The discussion that we just, that I just had with opposing counsel leads me to pose you this question. Why shouldn't we remand for a trial of whether the law of, whether COAP as construed in matter is satisfied here? Because, Your Honor, the district court already considered this issue as a 12b1, where evidence is produced about what the policies were, and the district court was entitled under the 12b1 standard to assess that evidence. It wasn't required to defer to the complaint on that point. But it didn't address it. I don't know if it considered it or not. Oh, it did, Your Honor. Its discussion on the failure to warn, to me, was plain vanilla at best. So, Your Honor, the district court judge discussed at length the policies that were at issue. So, in particular, this was the Standing Rock Sioux Tribe that was contracting with the... Your Honor, what besides de minimis cost was argued? So, in this case, it's actually, it's not really about just the cost of six years. This is a case where the tribe, pursuant to its self-determination contract, had the discretion to decide how best to effectuate its very large replacement project. So, what was happening was that the tribe was assessing... Tell me where in the record I will find evidence regarding whether the BIA and or the tribe had a policy regarding warning signs on these tribal, these roads across, the tribal, across the reservation. So, Your Honor, the appendix contains all of the documents that we, that we have here and the documents... No, there are all kinds of documents because we're arguing about different things. I want to know the policy. Is there a policy document? We, the BIA requires the Indian tribes, when they're in control, to post adequate warning. There is no such, no such document. Let me, let me just read you a few of the points. If you look at page 128 of the appendix, this is a relevant contract for the tribe. It says that the tribe shall exercise full discretion over the funds subject only to the provisions of this contract and federal law. There's a regulation that says that the tribe, this is at 25 CFR 900.5. Now, where's the evidence about the tribal policy? So these are, these are the, we put forward under 12b1 the evidence about the fact that there is no such policy, that the tribe had full discretion here. It's plaintiff's burden under this Court's cases, like Hurden, plaintiff has a burden to prove jurisdiction under 12b1. And there is no, under the first part of the discretionary function test, there is no identified mandatory policy under this Court's cases, for example, in CRS, that would specifically prescribe the course of conduct as to warnings. Rather, the tribe was pursuant to the Indian Self-Determination Act, given policy discretion to decide how to implement this road maintenance program in accordance with its needs, stretched out over 200 miles of roads in its reservation. And more particularly here, this was the tribe's decision-making about how best to address maintenance at the Kennel Road culvert. As opposing counsel has noted, plaintiffs no longer contest that those decisions generally fall within the discretionary function exception under this Court's cases. But I think the point is, and this is, I assume the reason they aren't appealing the warning issue, is if the tribe has a limited amount of money and they decide that the culvert 15 miles away needs repair sooner than the one that actually failed, that's a discretionary decision on how to use funds. I guess the question that Judge Wilkins, and I don't mean to speak for him, but I think he's asking, and what I'm concerned about is, but what if it's de minimis, to put up a sign? Is that, are you saying, is there any policy consideration here other than economic for their failure to make a warning? Yes, Your Honor. So two points. One is this Court's cases, but let me first address, you know, this case. So the tribe here, as you noted, has 200 miles of roads. It had a list of 50 priorities, 50 projects that it was undertaking. The record is undisputed that it did not have enough funds to undertake all of them. It needed to, for example, sometimes save money from one year to use the next year to allocate with others for larger projects. As for the Kennel Road culvert, the tribe conducted assessments, it conducted an environmental assessment, an engineering assessment. It decided, as between options like installing a slip liner versus replacing the whole thing, it was going to replace the whole thing. This is a very massive project. I'm pretty sure that if this was a highway, an accident on a state highway, at least in the Eighth Circuit or in Minnesota, there would be a negligence cause of action against the highway department. And it wouldn't be, sovereign immunity would not preclude it. And therefore, whether the highway department had a policy to go out and make sure that to determine what intersections or curves or what not may be hazardous in the post-appropriate warnings, that would be every bit, that would be discoverable. And its presence or absence might or might not be determinative. But, I mean, a 12B1 motion invites the court to hold evidentiary hearings on fact issues that are required to decide jurisdiction. And my suggestion is, why isn't this such an issue? Well, number one, plaintiffs have not argued for that and did not, I don't believe, request an evidentiary hearing. Or if they did, the district court must have denied it. But I don't exactly know the particulars of that. But what is true under this Court's case is that it is the plaintiff's burden to establish jurisdiction. You're talking too fast and too long. Oh, I'm sorry. So just to reiterate that it is the plaintiff's burden to establish jurisdiction, we have documents here establishing what the trial was doing. And let me just point this Court to the... You're talking about the decision not to replace the culvert. We're talking about the decision of whether to put up a sign. So let me just point the Court to Medder, for example. So in Medder, the Army Corps of Engineers had decided to conduct repairs along a shoreline, and it took off guardrails. It already had in place a policy about keeping off guardrails, which doesn't exist here, for example. But it took them down, and it was deciding how to best address the repairs. And this Court said, in the context of that safety project, when you're undertaking a project like that, it is within the discretion of the Army Corps of Engineers to decide how best to address... No, it was, Your Honor. The tribe was undertaking replacement of the culvert. You mean there was equipment out there? They hadn't done it for five years, and they weren't planning to do it for another five, right? That's all the record shows. No, Your Honor, respectfully, no. The record shows that the tribe had conducted assessments and then was securing funding from the BIA because it was such a massive project, they needed additional funds. Now, as the Court explained in Medder... The policy question is, what do we do in the interim? When we aren't doing P-Turkey, and there's no indication to the people crossing this culvert that it's hazardous, what should we as a tribe do to protect our constituents? And that is quintessentially a policy determination? No, first you have to determine if it's dangerous. You ought to have a policy that we pay attention to whether our roads are dangerous. Medder just says COPE required... You know, that the existence of the policy was significant in COPE. And we weren't going to extend COPE a lot further. And so now that the government's urging, our district courts are ignoring that. So, Your Honor, respectfully, we are not pressing any new point here. We are following a long line of cases that this Court has held. It didn't follow... Well, maybe it may... Neither side followed COPE as construed in Medder. There should have been a... There probably should have been a Rule 12b1 evidentiary hearing on the tribe's policy regarding warnings. Your Honor, the district court did follow this Court's precedence very faithfully. What the Court said in Medder was that in COPE there had been already a policy to install particular warning signs about that danger, slippery when wet signs. And it said that the government hadn't identified what policy considerations would have entailed, would have been entailed in different signs. And in Medder, the Court said it wasn't, that wasn't relevant to the issue about whether to put up signs to begin with. That is exactly the case here. The plaintiff has not identified any mandatory policy, any policy at all about putting up warning signs at this culvert. As this Court said in Buckley, this Court has repeatedly held that decisions about whether to warn when they are grounded in assessments of the risk...  Oh, it is repeatedly, Your Honor. ...three cases that have talked with any seriousness about warning as opposed to the typical... I respectfully disagree, Your Honor. There's Faking, there's Hensley, there's Demery, which was thin ice. The case was about thin ice and failure to put up adequate warnings about the fact that the government was aerating a lake and people were riding snowmobiles in the area. And, again, that was a hidden hazard, same types of arguments about de minimis costs. And the Court said because the agency had to weigh what the cost would be, what the resource allocation would be against any benefit of the warning and analyze those various factors, the discretionary function exception applied. Then you have Medder. Then you have Buckley. Then you have this Court's... Oh, please, come on. I wrote one of them, at least one of them, and I was on the panel in another one, and I studied all of them in both of those cases. Well, then, Your Honor, I would just say that this Court should just follow those precedents here. The Supreme Court has made clear that Congress in the discretionary function exception was intending to shield decisions that were susceptible to balancing the factors such as resource allocation, such as deciding... Has it ever addressed warning issues? I don't recall a case... I don't think so. I don't recall a case right now, but this Court has many times, and the District Court faithfully followed them. Unless this Court has any further questions, I would just ask the Court to affirm. Thank you very much. Thank you. For rebuttal. Your Honors, Demery, Walters, and Alberti do not require the dismissal of every failure to warn claim brought under the Federal Tort Claims Act. Where the United States government, the BIA here, the BIA is responsible here, has knowledge of the severe hidden hazards of a failing culvert and fails to issue any warning to the public, they should not be able to avail themselves of the discretionary function exception immunity simply by invoking an attenuated connection to general funding. That's all we have here is the de minimis cost of the sign. The cases that find immunity for failure to warn, they're all, when they get to the discussion of what is grounded in social, economic, or political policy, you have the aesthetics cases. Those are cases where the policy is grounded. It's not a case where the policy considerations are simply lurking in the background as they are in a de minimis cost of a sign case. And I think that as you try and synthesize these cases in this fact-specific area of law, wherever you draw that line, if you include immunity for de minimis decisions about warning signs, you're immunizing everything the government does in the warning space because everything they do is dependent on The trouble is, buying your argument, your argument is a very threshold argument because if you really get down to this question on an evidentiary record, if a warning, what warning? And how would it have mattered? And what would it have cost? And how much periodic review of the situation from a warning standpoint would have been required? It wouldn't have been de minimis pennies. If I could respond during my time, yeah. I welcome the opportunity. Given the loss of life and the injuries to my client in this case, I think that I'd welcome the opportunity to try and make that record. We haven't had a chance yet and the government hasn't come forward with that evidence. Thank you, Your Honor. Thank you, Counsel. The case has been well briefed and argued. I think the argument has been helpful.